IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIE WILLIS, et al, | No C 04-2305 VRW |
| Plaintiffs, | ORDER |
| v | |
| CITY OF OAKLAND, et al, | |
| Defendants. | |

Plaintiffs are represented in this case by John L Burris (Burris) and Miles Washington (Washington). In an order entered June 19, 2005, the court ordered Burris and Washington to show cause why they should not be sanctioned pursuant to FRCP 11 and 28 USC § 1927. Doc #30 at 12-14 (the "OSC").

The parties are familiar with the facts underlying the OSC and thus the court need not fully recite them here. Suffice it to say the court concluded that the filing of plaintiffs' complaint was predicated on an inadequate investigation and that this reckless behavior by Burris and Washington unreasonably and vexatiously multiplied the proceedings in this case. Id. Burris and Washington filed their individual responses to the OSC on June

30, 2005.  Docs #32 (Burris Resp); #33 (Washington Resp).  These responses fail utterly to demonstrate why Rule 11 and § 1927 sanctions should not be imposed on Burris and Washington.

I

The first two pages of Burris' response read like a curriculum vitae rather than a response to an order to show cause. While the court does not doubt Burris' past contributions to the California legal community, these accomplishments do not explain or mitigate Burris' current and seemingly improper behavior.  Indeed, Burris' years of experience and success serve to <u>magnify</u> the egregiousness of the conduct at issue in this case.

Turning to the relevant portions of Burris' response, Burris claims that, initially, he and plaintiffs "had a lengthy discussion about what happened to Gregory Lewis (the decedent) and any related legal claims."  Burris Resp at 3 ¶7.  Burris claims that "during the meeting[,] plaintiffs gave [him] the names of potential witnesses."  Id ¶8.  Burris informs the court:

> As is my customary practice, I hired a Private Investigator to follow up with the witnesses whose names were provided by the plaintiffs and to canvass the neighborhood for potential witnesses. The investigator was Harvey Yarbrough.  Prior to filing the lawsuit, Mr Yarbrough provided me with an oral report with regard to the status of his investigation.  I have been unable to contact Mr Yarbrough at this time regarding this case due to his retirement from private investigation.

Id at ¶9.

Burris' response does not state whether Yarbrough confirmed or refuted plaintiffs' account of events surrounding the death of Glen Willis.  Indeed, Burris does not substantively inform the court regarding <u>anything</u> Yarbrough allegedly told Burris.  The court does

2

not know who Yarbrough investigated, what these persons witnessed and relayed to Yarbrough or whether Yarbrough relayed this information to Burris.

Next, Burris states that he contacted Protection and Advocacy Inc (PAI), a publicly funded organization that advocates for the mentally and physically impaired. Id at 4 ¶10. Burris contacted PAI "seeking information about [cases] similarly related" to plaintiffs' case. Id. Burris states that "[PAI] was somewhat helpful in assessing this case." Id.

Based on these events alone, Burris asserts that he signed and filed plaintiffs' complaint "based upon [his] understanding of the facts at the time." Id at 4 ¶11. Accordingly, Burris signed the complaint based on (1) a single interview with plaintiffs, (2) an oral "status" report (the substance of which remains a mystery) from a now-unavailable Yarbrough and (3) some form of limited conduct with PAI, an agency with having no connection to the events giving rise to plaintiffs' complaint. This is not an adequate investigation. Burris does not explain (1) how the new and substantially different facts contained in the first amended complaint (FAC) were discovered or (2) why his adequate prefiling investigation (which Burris appears to claim he conducted) failed to uncover these "new" facts.

II

Burris states that "[a]t some point in the process, the case was assigned to Miles Washington, a member of this bar, who leases office space in my suite, and who frequently works on my cases as an independent contractor." Id at ¶12. Washington's

3

response to the court's OSC is essentially one-page in length.  Doc #33.  Although short, Washington's response (unlike Burris' response) is quite telling regarding the events that preceded the filing of plaintiffs' complaint.

Washington states that he "was requested by Mr Burris to prepare and file a complaint" in this case.  Id at 2 ¶2.  Washington states that "when [he] received the file, it contained a claim dated August 13, 2003.  The matter had been referred to the Citizen's Complaint Review Board but had not been heard."  Id.  Washington states that he

> drafted the complaint on the basis of the facts stated in the claims which contained no allegations that Officer Clement shot Mr Willis.  There were no documents in the file which indicated that there was more to the incident than had been described in the claim.  I thought I had sufficient information to prepare the complaint.

Id ¶3.  Accordingly, Washington admits that he drafted and filed plaintiffs' complaint based entirely on papers contained in a file; he conducted no independent investigation into the allegations.  It appears Burris then signed the complaint with no further investigation.

Moreover, at the February 24, 2005, hearing, Washington represented that this inadequate investigation could be explained because the statute of limitations on plaintiffs' claims was about to expire.  Notably, Washington's response to the OSC does not explain this blatantly false representation.

Finally, Washington states that "[w]hen I received defendants' motion for judgment on the pleadings, I contacted the clients to review the facts and instructed an investigator to get

**4**

statements from witnesses whose names I had received from the clients. I [then] learned that Officer Clement had taken the action which was first in the proposed amended complaint." Id at ¶4. In effect, therefore, Washington confirms that neither he nor Burris made a reasonable inquiry in this case prior to defendants' filing a motion for judgment on the pleadings pursuant to FRCP 12(c). Had an investigation of the type made <u>after</u> the filing of defendants' Rule 12(c) motion been conducted <u>prior</u> to the filing of plaintiffs' complaint, the egregiously different facts contained in the FAC would no doubt have surfaced and defendants would not have been put to answering the frivolous original complaint and moving for a judgment on the pleadings.

### III

Based on Burris' and Washington's responses to the OSC, the court has no trouble concluding that § 1927 sanctions are appropriate to compensate defendants for having to endure these proceedings which have been unreasonably and vexatiously multiplied by Burris and Washington. Accordingly, defendants should file their request for attorneys' fees and costs reasonably incurred in (1) drafting and filing their original answer, (2) researching, drafting and filing their motion for judgment on the pleadings and (3) attending the February 24, 2005, hearing. This request should be supported by a declaration containing a detailed hourly record and in accordance with the principles set forth in <u>In re HPL Technologies, Inc, Securities Litigation</u>, 2005 US Dist LEXIS 7244 (ND Cal 2005) (Walker, J). Defendants' request should be filed on or before August 13, 2005.

Upon receipt of defendants' memorandum, the court will issue an order addressing sanctions under Rule 11 and § 1927.

SO ORDERED.

_____
VAUGHN R WALKER

United States District Chief Judge