JOHN A. RUSSO, City Attorney - State Bar #129729
RANDOLPH W. HALL, Assistant City Attorney - State Bar #080142
JAMES F. HODGKINS, Supervising Trial Attorney - State Bar #142561
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-6135      Fax: (510) 238-6500
23580/792000

Attorneys for Defendants
CITY OF OAKLAND, et al.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIE WILLIS and LAVITA OLIVER, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF OAKLAND, a municipal corporation; RICHARD WORD, in his capacity as Chief of Police for the CITY OF OAKLAND; CITY OF OAKLAND police officers FOUGHT and CLEMENT; and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No. C 04-2305 JW <br><br> **JOINT STATEMENT REGARDING CASE STATUS** |

The parties, by counsel and pursuant to the Order of Court of March 24, 2011, present their Joint Statement on the status of the case herein, as follows:

**I.   (FOR PLAINTIFFS): STATEMENT OF THE CASE**

As related in the Order of December 28, 2009 (Dkt No. 154), the case arose in Oakland, on August 6, 2003, after plaintiff Lavita Oliver called 911 to request an ambulance to get her brother, Glen Willis, to the hospital. Glen had major physical and psychiatric problems. His sister had been established by County health services as his

care-giver. She believed he had not been taking his medication—including thyroid and diabetes as well as psych medicine—and spoke about it to the doctor. He directed her to call 911 to have him brought to the hospital so his regimen could be re-established.

Officer Fought responded to the 911 call. Ms. Oliver asked him to call an ambulance but he ignored her. Joined by Officer Clement, who arrived as back-up, Fought pounded on the door to Glen's house, and windows, demanding that he open up. When there was no response, he insisted that Ms. Oliver give him the keys, and she reluctantly did so. The two officers then went to the door, and Officer Clement used the keys to open an outside security gate, then began to open the inner door. As he did so, the door opened from within and Glen charged out, brandishing a large knife. He lunged at Clement, stabbing him in the upper arm, where a deep cut opened, as he retreated. Officer Fought, who had waited beside the doorway, shot Glen and he went down. His sister, standing a few feet away, said he fell on his stomach, facing towards her; they made eye contact and she thought, Thank God, it's over. But it wasn't over.

Officer Fought, soon joined by Officer Clement from just behind Glen's prone body, kept shooting at him as he lay on the ground; and the two kept firing until he had been hit some 20 times, and was dead. Other officers arrived quickly and took Ms. Oliver into custody, locking her in a police car. Instead of allowing her to go to her brother, or to the hospital, or to be with her minister, who arrived just after the shooting, she was taken against her will to OPD headquarters and interrogated at length by homicide detectives—for purposes that have yet to be explained or remotely discerned—before finally being released.

/ / /

Each officer testified at deposition that, after stabbing Clement, and supposedly grappling desperately with him, Glen kept coming at him with the knife—both said it—and would not go down despite their fusillades. The Coroner's pathologist, however, testified that there were no gunshot wounds to the front of Glen's body. Instead, there were a number of shots in his right side: two together, then several more, coursing across the torso, at a slight (15 degree) angle, back to front; and another series in the back, generally at a 30 degree upward angle (calculated as if the body were in a standing position), back to front. In other words, both sets of wounds (after the first two) were consistent with shots fired while Glen lay face down on the ground in front of his house.

On summary judgment, the Court noted the likely applicability of the rule of Alexander v. City and County of San Francisco, 29 F.3d 1355 (9th Cir. 1994), "...because whether the officers' entry into the home under the circumstances was reasonable remained a fact in contention", (Order of 12/28/09, p.10:4); and denied the motion as to the claims for excessive force and wrongful death, and for Negligent Infliction of Emotional Distress as to Ms. Oliver.

## II. PROCEDURAL STATUS

The case went through a confused and frustrating history prior to being taken up by present counsel for the plaintiffs early last year. Save for some leftover discovery details currently being ironed out between counsel, it is ready for trial. Two previous settlement conferences were unproductive, and, as related in counsel's recent letter, prospects for the third—now set for May 8, 2011—are not promising. Plaintiffs estimate a trial will take four to six court days (including jury selection), and request the Court to set the earliest possible trial date.

### III. Defendants' statement:

Plaintiff and decedent Glenn Willis was a paranoid schizophrenic. On August 6, 2003, after becoming concerned about Glenn's welfare, and on the advice Glenn Willis' physician, plaintiff Lavita Oliver contacted the Oakland Police Department (OPD) through the 911 emergency number. Defendant Officers John Clement first responded to the scene and was joined by and Tyler Fought.

When Officer Fought arrived at the scene, he met with Ms. Oliver. Ms. Oliver told Officer Fought that she knew that her brother was home because she had talked with him earlier. Officer Fought also spoke with Oakland Police Officer Ross, who had been to the address the day before on a "well-being" check at Ms. Oliver's request. She told Officer Fought that Glenn Willis had a mental disorder, had apparently not been taking his medication, and was known to carry a knife. Officer Ross had been given a key to the residence by Ms. Oliver on her visit in order to check on Glenn Willis inside the home and so that he could be taken to John George Hospital for a Welfare & Institutions Code section 5150 "hold".

On the day of the incident, the two officers discussed their approach to the situation. They decided first to attempt to reach Glenn by phone, and then, as Ms. Oliver had requested, enter the apartment. Ms. Oliver, as she had done the previous day, gave the keys to the residence to the officers. When there was no answer by phone, the officers and Ms. Oliver began knocking on the doors and windows of the house, identifying themselves as police officers, and asking Glenn to come outside.

Having received no response, and having been given the keys by Ms. Oliver, the officers went to the front door and knocked again. Officer Fought was in front, and Officer Clement behind him. Officer Fought first opened a heavy metal security door, and then

/ / /

/ / /

1  knocked again on the inner wooden door, announcing "Oakland Police". As he unlocked
2  the inner door, he had the sense that it was being pulled open; the apartment inside was
3  completely dark.
4       Within seconds after Officer Fought opened the door, Glenn Willis burst out of the
5  apartment with a knife in his hand, immediately enveloping Officer Clement in a bear hug
6  and stabbing Officer Clement in the arm; the knife went completely through his arm,
7  severing his triceps and wounding him in the back. The force of the brutal attack carried
8  Officer Clement to the fence surrounding the property. As Glenn Willis was attacking
9  Officer Clement, the officer managed to discharge his sidearm, but, despite apparently
10 being shot, Willis drove the officer backward to the fence, stabbing him again.
11      Willis slammed Officer Clement into the fence, causing them both to fall down, the
12 officer on top, and Glenn underneath him still holding his knife, still trying to stab the
13 officer. Officer Clement bounced up and again shot at Willis at which point Glenn kicked
14 the gun out of Officer Clement's hand. Glenn turned with his knife in the direction of
15 Officer Fought, who fired multiple shots at him, with no evident effect. Glenn eventually
16 fell to his knees, but while on the ground with his knife still in his hand continued to move
17 toward Officer Fought. Officer Fought fired again at Mr. Willis, at which point he fell
18 completely to the ground. The attack took place in a matter of seconds. Mr. Willis died of
19 his wounds. Officer Clement suffered permanent injuries from the attack.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

## IV. PROCEDURAL STATUS

Defendants are generally in agreement with Plaintiffs' statement regarding the procedural status of this case. Defendants remain hopeful, however, that the case can be resolved at a settlement conference.

DATED: March 30, 2011                    Respectfully submitted,

/S/
Dennis Cunningham
Attorney for plaintiffs

DATED: March 30, 2011

JOHN A. RUSSO, City Attorney
RANDOLPH W. HALL, Assistant City Attorney
JAMES F. HODGKINS, Supervising Trial Attorney

By:    /S/ James F. Hodgkins
Attorneys for Defendants
CITY OF OAKLAND, OFFICERS FOUGHT AND CLEMENT